264 So.2d 893

**THOMPSON CHRYSLER–PLYMOUTH, INC., a Corporation**

v.

**Leon T. MYERS.**

**1 Div. 67.**

Court of Civil Appeals of Alabama.

July 12, 1972.

J. Glenn Cobb, Jr., Mobile, for appellee.

McDermott & Deas, Mobile, for appellant.

BRADLEY, Judge.

This is an appeal from a verdict and judgment of the Circuit Court of Mobile County rendered for appellee and against appellant for $2,500 and interest at 6% per annum for two years, amounting to a total of $2,800.00.

The original complaint contained six counts and was directed against appellant and Chrysler Corporation, a corporation, "jointly and individually," charging them with a breach of warranty in the manufacture and sale of a 1969 Chrysler automobile.

There were several amendments to the complaint and the amended complaint resulting contained four counts. To this amended complaint pleas of the general issue were filed and a trial was had before the court and a jury.

The jury's verdict was for appellee and against appellant, Thompson Chrysler-Plymouth, Inc., in the amount above stated. Motion for new trial was overruled and appeal was taken to this court.

The tendencies of the evidence reveal that the appellee purchased a 1969 Chrysler Newport automobile from appellant on September 10, 1969, and from the beginning, appellee says that there were many defects in the automobile, such as leaks around the windshield, the windshield was cracked, doors were sprung and the rubber insulation around the doors was cut into and chewed up, pad on dashboard was cracked, leak around back window, engine would run after ignition turned off, right side of automobile out of alignment, brakes did not function properly, air conditioning leaked and did not function properly.

Appellee says he carried the automobile back to appellant for repairs many times, but satisfactory repairs were never made to the automobile. Having failed to receive satisfactory service from appellant, appellee wrote Chrysler Corporation asking that something be done about the defects in his automobile.

No real effort, however, was made to remedy the defective condition of the automobile until after this action was filed in the Circuit Court, although it was stated by an expert witness for Chrysler Corporation that the appellee was requested in the early part of 1970 to take the automobile in to appellant's shop for inspection and repairs. Appellee carried the car to appellant's shop as directed, but states nothing was done to his car and Chrysler's witness said he was not present and did not know what, if anything, was done to appellee's automobile.

Chrysler's witness also stated that the defects complained of resulted from faulty workmanship and that appellant could fix the defects.

At the time of purchase in 1969 appellee agreed to pay appellant a total price of $4,420.09 for the automobile. This was the credit price of the 1969 Chrysler. The price was made up of a figure of $3,695 for the car, i. e., cash price, and contained charges of $55.45 for sales tax, $88.87 for life insurance, and $574.72 for finance charges. Appellee made a down payment of $1,450 on the purchase of the automobile.

Appellant's witness stated the value of the automobile at the time it was purchased was $3,695. Appellee stated that the value of the car at the time he purchased it was what he had to pay for it, i. e., $4,420.09.

There are 18 assignments of error and they are argued in two groups, i. e., group I is based on the premise that the case was tried on the basis of a joint contract between Chrysler Corporation, appellant and appellee, with a recovery being had against only one of the defendants, hence there was a fatal variance; and group II contends that the verdict was excessive mainly because the jury was allowed to consider as a part of the total price paid for the car the interest charged for financing the car.

In arguing the assignments under group I, appellant, in essence, contends that the complaint alleges a joint contract beween Chrysler Corporation, appellant and appellee, but that the proof does not support such a joint contract, for at most it shows an implied warranty from appellant to appellee and an express warranty running from Chrysler Corporation to appellee.

The trial court in its oral charge and in its given written charges instructed the jury to disregard Counts I and III of the complaint and that appellant could only be found liable under Count II on the theory of implied warranty and Chrysler Corpora-

tion could only be found liable under Count IV on an express warranty.

In answer, appellee says that the defendants, appellant and Chrysler Corporation, were sued "jointly and individually."

Furthermore, according to appellee, Count II of the last amended complaint asserted that, ". . . the Plaintiff purchased from the Defendant, Thompson Chrysler-Plymouth, Inc., the agent, servant, employee or dealer of the Manufacturer-Defendant, Chrysler Corporation, One New 1969 Chrysler Newport four-door sedan automobile . . . ." Appellee says that this allegation indicates a several as well as joint allegation.

Appellee further contends that appellant has waived error, should there be any error, for failure to specifically object to a variance between the proof and averments or to ground its request for the general charge on the alleged variance.

Rule 34, Circuit and Inferior Court Rules, Title 7, Appendix, Code of Alabama 1940, as Recompiled 1958, provides:

"In all cases where there is a variance between the allegations and proof, and which could be cured by an amendment of the pleading, the trial court will not be put in error for admitting such proof unless there was a special objection making the point as to the variance. . . . Nor will the trial court be put in error for refusing the general charge predicated upon such variance, unless it appears from the record that the variance was brought to the attention of the said trial court by a proper objection to the evidence."

■ Where the trial court is sought to be placed in error for a variance between the pleading and proof based on its refusal to grant the general affirmative charge, the rule is that the variance must be pointed out in the requested general charge and also brought to the attention of the trial court by "proper objection to the evidence."

American Nat. Bank & Trust Co. v. Banco Nacional De Nicaragua, 238 Ala. 128, 189 So. 191; and Cassady v. Williams, 234 Ala. 299, 174 So. 485.

The requested affirmative charges that were refused to the appellant by the trial court did not mention a variance nor does the record disclose any objection to the evidence based on this ground. Moreover, the record is devoid of any mention of a variance.

The first time that a question of variance appears is on appeal in appellant's brief.

■ We consider that appellant failed to properly apprise the trial court of any alleged variance, and cannot now fault the trial court for failing to rule on a matter that was never presented to it for decision.

The issue raised by appellant's group II argument is that the verdict and judgment entered thereon is excessive mainly because of the inclusion in the value of the car of the finance charges appellee had been required to pay to finance the said car when he purchased it in September 1969.

The testimony shows that the price appellee paid for the 1969 Chrysler was $4,420.09. Included in this amount is a finance charge of $574.72.

Appellant says that the inclusion of the finance charge in the price paid for the car is contrary to the provisions of Title 7A, Section 2–714, Code of Alabama 1940, as Recompiled 1958, which provides:

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount, and nothing in this section shall be construed so as to limit the seller's liability for damages for injury to the person in the case of con-

sumer goods. Damages in an action for injury to the person include those damages ordinarily allowable in such actions at law."

Appellant says that the measure of damages for the breach of the implied warranty extending to appellee would be the difference between the value of the car at the time and place of acceptance and the value it would have had had it been as warranted. Section 2–714, supra, in essence, so provides with the additional proviso that special circumstances can call forth damages of a different amount.

Appellee argues that the price of $4,420.-09, which included the finance charge of $574.72, was its value to him at the time he purchased it, for this was the price he had to pay for it in order to obtain possession of it. He says that this is the price he would have had to pay if the car had been as it had been warranted at the time of purchase.

Appellee also points out that the agreed on price of $4,420.09 was to be paid to appellant and no one else.

Appellant counters by saying that the value of the car for the purpose of arriving at the measure of damages was the "cash price," i. e., the cash price of the car —$3,695.00—rather than the credit price of the car, which included the finance charge of $574.72.

The evidence submitted in support of the value of the automobile at the time and place of its purchase was the testimony of the appellee-purchaser that he paid $4,420.-09 for the car, which was the so-called credit price for the car and the testimony of a witness for appellant that the price of the car was $3,695.00, the so-called cash price for the car.

Appellant says that $3,695 is the price the car would have been sold to appellee for had appellee had cash to pay for the car, but since appellee did not have the cash, the credit price of $4,420.09 was the price he was charged. This is all of the

evidence on the subject of the value of the car at the time and place of purchase.

In Becker Roofing Co. v. Carroll, 37 Ala.App. 385, 69 So.2d 295, the Court of Appeals, in a case involving a breach of warranty for a roof that had gone bad, had before it a question concerning the value of goods at the time they were delivered to the buyer under Title 57, Section 75(7), Code of Alabama 1940, as Recompiled 1958, which was a provision very similar to Section 2–714, supra. The only testimony before the court concerning value was the buyer's statement that he paid $265 for the installed roof. Based on these facts, the court said:

"However, in the absence of other evidence, and there was none in this case, the purchase price agreed on is prima facie evidence of the value of goods had they been as warranted. Lamborn & Co. v. Green & Green, 150 Tenn. 38, 262 S. W. 467. Or as stated in 77 C.J.S. Sales § 367, page 1305, which statement is supported by authorities from other jurisdictions: 'In fixing the value of property if it were as warranted, as an element of the measure of damages, the purchase price has been said to be strong but not conclusive, the best, prima facie, strong prima facie, or, in the absence of other evidence, sufficient evidence of such value.'

"The evidence presented by the appellee further tended to show that the roof was valueless to the appellee for the purpose for which it was installed.

"This being so it is our conclusion that all of such evidence furnished a sufficient basis on which the court could properly assess the damages as being the amount of the purchase price of the roof."

In the instant case the "purchase price" of the 1969 Chrysler automobile, so far as appellee is concerned, was $4,420.09, the total cost of the car to him. He had been told that the car could be bought at a cer-

tain price for cash and at a higher price if it was to be on credit. Not having the cash, appellee purchased the automobile at the credit price. So, ". . . the purchase price agreed on" was, in the instant case, the credit price of $4,420.09.

The Supreme Court in Emmco Insurance Co. v. Howell, 275 Ala. 270, 154 So.2d 28, said:

"'Cost' is the actual price paid for goods. 'Price' however, is not necessarily synonymous with 'value,' or 'cash value.'

"The terms 'price' and 'value' (as well as 'cost') are apt to be sometimes used interchangeably."

It was held in Newton v. Wilder, 225 Ala. 339, 142 So. 831 that the cost of an article is admissible in evidence and is to be considered along with all other evidence of value unless it be too remote and thereby has no probative effect.

Thus we see that the "purchase price" or "cost" of personal property or goods is admissible as going to the value of such property or goods at the time and place of purchase.

After the contract of sale signed by appellee had been admitted into evidence by agreement of the parties' attorneys, appellee was questioned as to various items of cost listed on the contract. Appellant objected giving no grounds, and the court then advised the parties that the items making up the total consideration for the automobile could be brought out for the purpose only of showing that they were a part of the total price paid by appellee.

Then appellant, during argument to the jury by appellee's counsel, excepted to statements made by said counsel to the effect that appellee paid between $4,400 and $4,500 for the automobile, on the ground that this was the credit price.

The trial court overruled the exceptions on the ground that the price paid by appellee had been given to the jury in the form of the sales contract, and various items of cost were listed on that contract; and the trial court specifically said that he would leave it up to the jury to give what weight it wished to the evidence bearing on the value of the automobile at the time and place of purchase.

The court, in charging the jury on the issue of damages, said:

". . . the measure of damages is the difference between what would have been the fair and reasonable market value of this article had it been in the condition in which it was warranted to be and the actual reasonable market value of the article in its actual condition . . ."

There were no requests for charges by appellant relative to the value of the automobile at the time it was purchased, nor was there a request for an explanatory charge of the trial court's oral charge on damages.

The evidence as to value, i. e., total purchase price paid by appellee for the automobile, was before the jury by virtue of the contract of sale and testimony of appellee, and, after receiving such evidence, it devolved upon it to weigh that testimony along with all the other value testimony and arrive at a value for the automobile at the time and place that it was purchased by appellee. This was done in this case and in the present state of the record we cannot say that the trial court erred in allowing the jury to consider the evidence in question.

No reversible error having been argued in brief, this case is affirmed.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.